# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:09-cr-994 |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| LAZARO MEDINA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

Maria Valdez, Magistrate Judge,

This matter was referred to this Court for a Report and Recommendation on Defendant Lazaro Medina's Motion to Suppress Evidence and Quash Arrest Warrant [Doc. No. 31]. The Court conducted an evidentiary hearing on the motion on June 10, 2010, and has reviewed the pre-hearing and post-hearing briefs filed by the parties. At the hearing, Medina withdrew the portion of the motion seeking to quash the arrest warrant [Doc. No. 48]. For the following reasons, the Court recommends that the motion be denied.

## BACKGROUND

FBI agents arrested Defendant Lazaro Medina pursuant to an arrest warrant on December 10, 2009 at his home at 432 S. Michigan Avenue in Villa Park, Illinois. Mot. ¶ 1. After Medina was placed into custody, law enforcement officers conducted a security sweep of his home, and sat him on the couch in the home's front room. June 10, 2010 Supp. Hr'g Tr. ("Tr.") at 7.

Agent Matthew Darby was a member of the arrest team. *Id*. at 4. At the evidentiary hearing, he testified that he spoke with Medina while Medina was seated on the couch in his

home. *Id*. at 8. He stated that the purpose for his conversation with Medina was twofold: he wanted to "advise [Medina] of the federal [criminal justice] process" and to "ask if it was okay if [law enforcement officers] search[ed] the residence." *Id*. at 9. It is Agent Darby's second reason for speaking with Medina – the attempt to gain consent to search the residence – that underlies Medina's motion to suppress.

According to Agent Darby, he first asked Medina if he would allow the members of the arrest team to search the residence. *Id*. After Medina stated that he wished to speak with his wife before allowing such a search, Agent Darby requested consent for a different search. This second search, according to Agent Darby, would have been a canine search of the interior of the residence. *Id*. at 10. Agent Darby said he told Medina that a canine search of the interior of the residence would avoid making a mess (and presumably, obviate Medina's need to speak with his wife regarding the search) because the canine would lead the law enforcement officers only to the specific areas of the house that needed to be searched. *Id*. at 10. Medina refused that offer, stating again that he wished to speak with his wife before allowing the arrest team to search inside his home. *Id*.

Agent Darby then requested consent to perform yet another search. *Id*. This time, according to Agent Darby, he asked Medina if it would be acceptable for the law enforcement officers to use the canine to search "outside of the residence, the backyard by the boat and the car and the garage." *Id*. Agent Darby testified that Medina consented to that search. *Id*. He stated that Medina was relaxed and calm when he gave his consent. *Id*.

After Medina consented to the exterior canine search, Agent Darby said he called Task Force Officer John Schillinger, who was also a member of the arrest team, *Id*. at 45, over to join

2

the conversation in order to witness Medina's consent to the canine search of the exterior of the residence, including the backyard and area around the detached garage. *Id*. at 10-11. Officer Schillinger did join the conversation, *Id*. at 49, and at that point Agent Darby testified that he repeated his request to Medina to search the exterior of the residence, including the area around the detached garage. *Id*. at 11. Agent Darby said Medina consented to the search. *Id*. Officer Schillinger corroborated this testimony. *Id*. at 49.

After that conversation, Agent Darby testified that he went outside the residence and called his brother, Officer Don Darby, who is a canine officer with the Glendale Heights Police Department. *Id*. at 11-12. Agent Darby testified that Officer Darby told him he was currently executing a search warrant in Glen Ellyn, Illinois and would proceed to Medina's residence thereafter. *Id*. at 12. Agent Darby told Officer Darby to come to Medina's residence "lights and siren." *Id*.

Agent Darby did not obtain written consent for the search of the exterior of the home. *Id*. at 32. He stated that he did not do so for several reasons. The first reason was that verbal consent was all that was necessary to conduct the search. *Id*. at 42. The second was that Medina could have revoked his consent at any time prior to the search. *Id*. If Medina had revoked his consent, Agent Darby testified that he would have no longer had the right to search the exterior of Medina's residence. *Id*. The final reason Agent Darby gave for not seeking a written consent from Medina was that he believed Medina would have refused to sign the consent form. *Id*. at 43. Agent Darby testified that his opinion was based on his training and experience. *Id*.

When Officer Darby arrived at the Medina residence, he began the canine search of the exterior of the home with his dog, Lucky. *Id*. at 13, 58. When Lucky reached the area outside

3

the detached garage, it alerted to the presence of narcotics. *Id*. Agent Darby used that alert to begin the process of obtaining a search warrant to search Medina's house and detached garage. *Id*. at 38. That search uncovered the evidence that Medina now seeks to suppress.

Medina says the evidence seized during the search of his detached garage should be suppressed because he never gave written or oral consent to the canine sniff search of the exterior of his home or the area surrounding the detached garage. Mot. ¶ 3. He says that none of the law enforcement officers ever asked for his consent to bring a drug-sniffing dog into his house or onto his property. Reply, Ex. A ¶ 4; Tr. at 67, 81. He asserts that no officer informed him of his right to refuse consent, or provided him with a consent form to sign. Reply, Ex. A ¶ 5. If they had, he claims he would have refused to sign it. *Id*. ¶ 6. Thus, Medina argues that the evidence seized pursuant to the search must be suppressed.

## **DISCUSSION**

A warrantless search of a person's home without exigent circumstances is presumptively unreasonable. *United States, v. McGraw*, 571 U.S. 624, 628 (7th Cir. 2009) (citation omitted). However, that general rule is subject to well-recognized exceptions, including the person's voluntary consent to the search. *Id*. Whether a person gave voluntary consent to a particular search is a question of fact to be determined from the totality of the circumstances, and the government bears the burden of proving voluntary consent by a preponderance of the evidence. *Id*. (quotation marks and citations omitted).

As stated above, the only issue presented by Medina's motion to suppress is whether he consented to allow the canine to come onto his property to sniff around the perimeter of the house and garage. The government relies on the testimony of Agent Darby and Officer

Schillinger, balanced against Medina's testimony, to establish that Medina consented to the canine's presence on the property. Medina, on the other hand, believes that the evidence supports alternative conclusions. First, Medina argues that Agent Darby could not have reasonably believed that he had consent to search any part of Medina's home, including the exterior, in the wake of Medina's stated desire to speak with his wife. Medina also argues that Agent Darby's failure to obtain written consent from him supports the conclusion that Medina never consented to the search. Because the government's evidence and argument are more credible and persuasive than Medina's, the Court finds, based on a preponderance of the evidence, that Medina voluntarily consented to the canine search of the exterior of his house, including the area around the detached garage.

Agent Darby's testimony credibly illustrates that Medina consented to a canine search of the exterior of his property. He stated that he had a conversation with Medina during which Medina said he wanted to wait for his wife to get home before allowing a search of the interior of his home, but that it was alright for agents to conduct a canine search outside his home. Tr. at 9-10. He then testified that he obtained consent again in the presence of Officer Schillinger, *Id*. at 11, and that testimony was corroborated by Officer Schillinger. *Id*. at 49.

Medina's testimony does not credibly refute version of events recounted by Agent Darby and Officer Schillinger. Medina initially provided an affidavit stating he never consented to the search. Reply, Ex. A. Then at the hearing, he stated that the only statement he made to any law enforcement officers was that he did not speak English. Tr. at 68. However, he later admitted that he did in fact say something to a law enforcement officer about wanting to wait until his wife

5

got home. *Id*. at 69-70.¹ Thus, Medina's testimony provides some support for Agent Darby's testimony rather than refuting it completely, and supports the Court's finding that Agent Darby's testimony is credible.

Moreover, Medina's attempt to characterize his request to speak with his wife as a vague response that could not have led Agent Darby to believe consent had been given to search the exterior of the home is unpersuasive. Agent Darby and Officer Schillinger each testified that Agent Darby clearly explained the parameters of the exterior canine search to Medina and that Medina consented to the search. *Id*. at 11, 49. The only evidence Medina has offered to challenge that testimony is his own testimony, which the Court finds less than credible because it contains several contradictions about the conversation that took place between Agent Darby and Medina.

Agent Darby's instruction to Officer Darby to come to Medina's home "lights and siren" and subsequent rush to conduct the exterior canine search also reasonably suggest that Medina verbally consented to the search. Through experience and training, Agent Darby stated that knew a verbal consent to a search of any kind could be revoked at any time. *Id*. at 42. Thus, it is reasonable to conclude why Agent Darby wanted the exterior canine search to commence quickly: it was because Medina had consented to the search.

Medina has not presented a theory that provides an alternative explanation for the actions Agent Darby took to quickly initiate the exterior canine search. Instead, he has argued only that the absence of a written consent form supports the conclusion that no verbal consent was given

---

¹Medina does not assert that he did not understand the agent's questions due to any limited English proficiency.

by Medina. And he has cited to numerous reported decisions regarding motions to suppress evidence that assign a "great deal of importance to the presence a [written] consent to search form." Def.'s Supplemental Br. at 3.

Undoubtedly, when law enforcement officers seek to conduct a search without a search warrant, obtaining written consent from a defendant or suspect is preferable to reliance on verbal consent. But written consent is not required, *see, e.g. United States v. Dean*, 550 F.3d 626, 630 (7th Cir. 2008), and Agent Darby stated that, based on his training and experience, he did not believe that Medina would have signed a written consent form. He also testified that he obtained Medina's consent in Officer Schillinger's presence. Tr. at 11. In response, Medina did not challenge the basis of Agent Darby's opinion and did not discredit Officer Schillinger as a witness to Medina's verbal consent. On balance, the lack of written consent from Medina does not vitiate the Court's finding that Agent Darby did obtain verbal consent for the canine search of the exterior of Medina's property. *See also Dean*, 550 F.3d at 631 (officer's decision not to get written consent in an exigent situation after he had obtained verbal consent in the presence of two other officers upheld).

In this Court's opinion, the government has carried its burden of proving by a preponderance of the evidence that Medina verbally consented to the canine search of the exterior of his property, including the area around the detached garage. Therefore, the Court recommends that Medina's motion to suppress be denied.

## **CONCLUSION**

For these reasons, the Court recommends that Defendant Lazaro Medina's Motion to Suppress Evidence and Quash Arrest Warrant [Doc. No. 31] be denied. Counsel has fourteen

days from the date of service of this Court's Report and Recommendation to file objections with the District Court. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327 (7th Cir. 1995).

**SO ORDERED.**                                     **ENTERED:**

**DATE: July 16, 2010**                             _____
                                                    **HON. MARIA VALDEZ**
                                                    **United States Magistrate Judge**